ROBERT J. BERNSTEIN (RB-4230)
THE LAW OFFICE OF ROBERT J. BERNSTEIN
488 Madison Avenue, 10th Floor
New York, NY 10022
Telephone: (212) 705-4811
*Counsel for Plaintiff*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE DR. HUEY P. NEWTON FOUNDATION, INC., | 11 CV 3476 (HB) |
| Plaintiff, | ECF Case |
| v. | **AMENDED COMPLAINT** |
| CAFÉPRESS.COM, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

The Dr. Huey P. Newton Foundation, Inc. ("HPNF" or the "Foundation"), for its

Complaint against CafePress.com, Inc ("CaféPress") alleges as follows:

### NATURE OF THE ACTION

1.       This is a civil action for federal trademark infringement and counterfeiting of the

Foundation's "Black Panther Party" and "All Power to the People" word and design marks;

federal unfair competition; violation of Dr. Huey P. Newton's ("Dr. Newton") posthumous right

of publicity under California law (assigned to the Foundation by Dr. Newton's widow); and

common law unfair competition.

2.       CaféPress, without authorization and in disregard of its prior representations of

cessation, has manufactured, advertised, promoted, distributed, sold and delivered a wide array

of infringing products bearing the Foundation's trademarks, and has unlawfully exploited Dr.

Newton's publicity rights by using his name, photograph, drawing, image or otherlikeness, or his persona, on, or in connection with, numerous manufactured, advertised and sold by CaféPress.

3.      Not content merely to manufacture and distribute these products, CafePress has compounded its infringements and violations by advertising and promoting the items on its website as a series of "Black Panther Party" and "Huey P. Newton" collections, including, without limitation, the following: "Black Panther Party T-Shirts & Tees," "Black Panther Party Gifts," "Black Panther Party Sweatshirts & Hoodies," "Black Panther Party Hats & Caps," "Black Panther Party Buttons, Pins & Badges," "Huey Newton T-Shirts & T's," "Huey Newton IPad Cases & Covers," "Huey Newton Coffee Mugs," "Huey Newton Bags, Tote Bags & Messenger Bags," and "Huey Newton Kids Baseball Shirts" and "All Power to the People" T-Shirts, Posters, Buttons and numerous other products

4.      Through these promotional activities, sales and other unlawful conduct, CafePress has profited by "free riding" on the Foundation's trademark and publicity rights. HPNF seeks in this action to disgorge and recover the illicit profits derived by CafePress from its multiple, willful infringements, trademark counterfeiting unfair competition and publicity right violations; to enjoin future infringements; and to obtain an awards of statutory damages for willful infringement and counterfeiting, and for its costs and attorney's fees in this action.

## JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction over the federal claims in this action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks); and pendent jurisdiction over the related state law claims the under 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over defendant CaféPress pursuant to

NYCPLR § 302(a)(1), (2) and (3) because, upon information and belief: (1) CaféPress transacts business and/or offers to supply goods within the State of New York (NYS); (2) CaféPress has committed a tortious act within NYS by offering to distribute and/or distributing the infringing products complained of herein within NYS and the SDNY; and/or (iii) CaféPress has committed tortious acts outside of NYS causing injury within NYS and (a) CafePress regularly solicits business within NYS, and/or (b) CafePress expects or reasonably should expect its tortious acts to have consequences within NYS and derives substantial revenue from interstate commerce.

       7.      Venue of this action in the Southern District of New York is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (c) because as a corporation defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction and defendant is subject to personal jurisdiction in NYS and the Southern District of New York. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, "a substantial part of the events … giving rise to the claim occurred" within the Southern District New York by virtue of defendant's advertising, distributing and selling the infringing products within the Southern District of New York..

## PARTIES

       8.      Plaintiff HPNF is a non-profit corporation organized under the laws of the State of California with places of business in Oakland, California and Vallejo, California. Since its formation in 1993, and continuing to date, the Foundation's principal activities have been centered in the City of Oakland, County of Alameda, California.

       9.      Defendant CaféPress is a for-profit corporation organized under the laws of the State of Delaware with its principal place of business at 1850 Gateway Drive, Suite 300 San

Mateo, California 94404. Upon information and belief, since its formation CaféPress' business operations have been centered in the City of San Mateo, County of San Mateo, California.

## FACTS

### HPNF's Trademark and Publicity Rights

10.     HPNF was established in 1993 as an educational and charitable foundation dedicated to preserving the legacy Dr. Huey P. Newton and the Black Panther Party through, *inter alia*, educational activities, publications, community activities, and related licensing, distribution and sale of clothing, posters and other products bearing the Foundation's trademarks.

11.     HPNF was founded by Dr. Newton's widow, Fredrika Newton, and David Hilliard, a life-long friend of Dr. Newton and one of the co-founders of the Black Panther Party. Fredrika Newton is the President of HPNF, and David Hilliard is its Executive Director and Treasurer.

12.     The Black Panther Party was founded by Huey P. Newton, Bobby Seale and David Hilliard in the 1960's. The Party's focus at that time was on community organization, including providing education to African-Americans as to their civil rights in the face of police and FBI harassment; political empowerment of African Americans; and social services, including free breakfasts and education to children from impoverished, urban neighborhoods, and raising awareness of sickle cell anemia and the importance of testing.

13.     During and after the 1960's, the Black Panther Party and Huey P. Newton became the subject of extensive news coverage of their political, community service and educational activities. Through their political, educational and social activities, they came to be widely known as leaders of the Black Power Movement.

14.     Beginning in the 1960's the Black Panther Party and Huey P. Newton capitalized

on their fame by placing the Black Panther Party trademarks and Huey P. Newton's name and image on such items as T-shirts, sweatshirts, caps, posters, books, pamphlets, newspapers and other items distributed in commerce.  Since 1993 and continuing to date, these activities have continued under the auspices of the Foundation.

15.    In 1995, Fredrika Newton, the widow of Dr. Huey P. Newton, assigned to HPNF, in perpetuity, an undivided fifty-one percent (51%) interest in (a) all Black Panther Party intellectual property inherited from Dr, Newton, and (b) all of Dr. Huey P. Newton's intellectual property including, without limitation, his posthumous right of publicity under California law; and further granted to HPNF the exclusive right to determine all matters concerning the use, exploitation and administration of such intellectual property, including copyrights, trademarks and publicity rights.

16.    By the time Fredrika Newton made this assignment to HPNF in 1995, the focus of the Black Panther Party and HPNF had become primarily educational and community oriented, in keeping with the evolution of Dr. Newton's activities and interests during the last two decades of his life.  Dr. Newton earned a B.A. in 1974 and a PH.D.( in Social Philosophy) in 1980, both from the University of California at Santa Cruz.

17.    The goals of HPNF are set forth in the Mission Statement on its website (www.blackpanther.org/MissionStatement.html) as follows:

> **Mission Statement.**  The Dr. Huey P. Newton Foundation is a community-based, non-profit research, education, and advocacy center dedicated to fostering progressive social change.  By preserving the history of multicultural activism and community self-determination, by educating the public about this history's continued relevance, and by creating a crucible for practicing ongoing progressive change, guided by the writings and teachings of Huey P. Newton, the Foundation seeks to empower all people, but especially urban youth, to be builders of a true global community.

18.    The importance of the Foundation's educational mission is well-recognized by the

academic community, as demonstrated by this 1996 press release issued by the Department of

Special Collections of the Stanford University Libraries on the occasion of Stanford's acquisition

from HPNF of certain Black Panther Party and Huey P. Newton archival materials (but not their

intellectual property rights): "[The Black Panther Party collection has] overriding research and

instructional value for the study of the African-American experience and the broader context of

social and political movements of the 1960s."

     19.     In furtherance and support of its educational mission, the Foundation has

continued to exploit (i) its trademarks through the sale and/or licensing of clothing, printed

materials, posters and other items bearing its registered trademarks, as set forth below, as well as

its other symbols of origin, and (ii) its right of publicity in the name, image and persona of Dr.

Huey P. Newton, including without limitation by incorporating his name into the name of the

Foundation and by selling and offering to sell products bearing his name, photograph, image and

likeness.

     20.     For over 15 years, HPNF has operated two websites (www.blackpanther.org and

www.blackpanthertours.com) for its educational and commercial activities. (Copies of pages

from these websites are attached hereto as Exhibits A and B). Through these websites, which are

linked, HPNF offers BLACK PANTHER TOURS "which provides a historical bus tour of sites

in Oakland, CA which were significant to the Black Panther Party, the civil rights movement and

United States history." In connection with these tours, HPNF sells to participants T-shirts,

posters and other items bearing the HPNF trademarks (as set forth in paragraphs 22 to 30 below)

and the name and/or image of Dr. Newton.

     21.     HPNF has for over 15 years provided lectures at colleges and university on the

Black Panther Party, the history of the civil rights movement and related subjects. In connection

with such lectures, HPNF sells T-shirts, posters and other items bearing (a) the HPNF trademarks (as set forth in paragraphs 22-30 below), and (b) the name and/or image of Dr. Newton, including, without limitation, the examples set forth in Exhibit C hereto.

22.     On September 9, 2008, HPNF received federal trademark Registration No. 3500290 for the mark THE BLACK PANTHER PARTY for goods in International Class 25 for "clothing, namely, T-Shirts, sweatshirts, jackets, and caps," based on HPNF's first use in commerce on such goods in 2006. Registration No. 3500290 has remained in full force and effect to date. (Copies of this Registration and the specimen submitted with its application are attached hereto as Exhibit D).

23.     On November 18, 2008, HPNF received federal trademark Registration No. 3535599 for the mark ALL POWER TO THE PEOPLE for goods in International Class 25 for, *inter alia*, "clothing, namely, T-Shirts, sweatshirts and caps," Registration No. 3535599 has remained in full force and effect to date. (Copies of this Registration and the specimen submitted with its application are attached hereto as Exhibit E).

24.     On April 20, 1994, HPNF received federal trademark Registration No. 2834703 for the word and design mark, consisting of the words THE BLACK PANTHER PARTY and an illustration of a black panther, for goods in both (i) International Class 16 (Printed Matter) including stationery, books, newsletters, newspapers and pamphlets on historical, political, philosophical, psychological, scientific and social topics, paper bags, posters, and art reproductions; and (ii) in International Class 25 (Clothing), including T-Shirts, sweatshirts, and caps. (Copies of this Registration and the drawing and specimens submitted with its application are attached hereto as Exhibit F).

25.     Registration No. 2834703 remained in full force and effect between its issuance

on April 20, 2004 and November 26, 2010 (hereafter, the "No. 2834703 Registration Period").

Registration No. 2834703 was inadvertently allowed to lapse, without HPNF's knowledge, as a

result of a transfer of HPNF's trademark matters from one law firm to another and a lack of

communication between those two firms.  HPNF does not have inside trademark counsel and

relied on its outside firms to file papers required to maintain Registration No. 2834703

26.     Upon learning, on April 29, 2011 of that cancellation, HPNF directed its

trademark counsel to file, as soon as possible, a new application to register the BLACK

PANTHER PARTY trademark and the BLACK PANTER PARTY WORD & DESIGN mark for

the same goods and based on the same first use as set forth in Registration No. 2834703.  This

application was filed on May 4, 2011 and was assigned Serial No. 85312748.  (Copies of this

application and the Trademark Office electronic record thereof, and the drawing and specimens

submitted with it, are attached hereto as Exhibit G).

27.     On August 25, 1998, HPNF received federal trademark Registration No. 2183503

for THE BLACK PANTHER PARTY for services in International Class 41 (Educational

Services) namely, "organizing and conducting educational youth conferences; operating an

historical archive; organizing traveling photographic and historical exhibitions; developing

tutorial and mentorship programs, namely, training youth in black history, conflict resolution,

and basic skills such as reading and writing; [and] producing documentary films;" and for

services in International Class 42 (Charitable Services), namely "providing food, medicine and

other resources; providing support services for senior citizens, namely, assisting seniors in

performing personal errands, such as banking, shopping and similar activities; organizing

counseling programs directed toward the African-American community; association services,

namely, promoting the interests of the African-American community; providing information

8

regarding the African –American community politics, economics and social issues via a global

computer network," based on first use in both classes in commerce in both classes in 1968.

(Copies of this Registration and the specimens submitted with its application are attached hereto

as Exhibit H).

      28.    Registration No. 2183503 remained in full force and effect between its issuance

on August 25, 1998 and May 16, 2009 (the "No. 2183503 Registration Period"). Registration

No. 2183503 was inadvertently allowed to lapse on May 16, 2009, without HPNF's knowledge,

as a result of a transfer of HPNF's trademark matters from one law firm to another and a lack of

communication between those two firms. HPNF does not have inside trademark counsel and

relied on its outside firms to file papers required to maintain and renew Registration No.

2183503.

      29.    Upon learning, on April 29, 2011, of the cancellation of Registration No.

2183503, HPNF directed its trademark counsel to file, as soon as possible, a new application to

register THE BLACK PANTHER PARTY for the educational services as set forth in

Registration No. 2183503, based on the same date of first use in commerce. This application

was filed on behalf of HPNF on May 9, 2011, and was assigned Serial No. 85316352 . (Copies

of this application and the Trademark Office electronic record thereof, and the specimen

submitted with it, are attached hereto as Exhibit I.)

      30.    On September 19, 2006, HPNF received federal trademark Registration No.

3146591 for BURN BABY BURN for goods in international class 30, namely "sauces,

excluding apple sauce and cranberry sauce," based its first use in commerce on such goods in

February 2006. Registration No. 3146591 remains in full force and effect.

**CafePress' Infringing Activities**

31.     Beginning in 2006 or earlier, and continuing at least through the date of the filing of the original Complaint herein on May 20, 2011, and continuing for some period of time theratter, CafePress has manufactured, advertised, promoted, distributed and sold numerous products bearing HPNF's registered trademarks, common law trademarks, and other symbols of origin.

32.     Upon learning of these infringements, HPNF instructed its then-trademark counsel, Margaret L. Tobias, to notify CaféPress of the infringements and to obtain itsr commitment to remove the items from its website and cease and desist from any further infringements.

33.     On September 1, 2006, Ms. Tobias wrote to CaféPress setting forth a detailed recitation of the numerous infringements and requesting their immediate cessation. The letter ("Tobias letter"), captioned "Unauthorized Use of Dr. Huey P. Newton Image and Black Panther Party Trademarks," was addressed to the attention of Candice Carr, CafePress's Intellectual Property Rights Agent and the person designated by CaféPress to receive infringement complaints. (A copy of Ms. Tobias September 1, 2006 letter is attached hereto as Exhibit J.)

34.     As evidenced by the Return Receipt Requested card that was returned to Ms. Tobias by the U.S. Post Office, CaféPress received her September 1, 2006 claim letter on September 5, 2006. (A copy of the completed Return Receipt Requested card is attached hereto as Exhibit K.)

35.     There then ensued a series of email correspondence between Ms. Tobias, on behalf of HPNF, and CafePress, culminating in CafePress' assurance that all of the products alleged to infringe Dr. Huey P. Newton's posthumous right of publicity and the Black Panther

Party trademarks had been removed from CaféPress website and were no longer being distributed by CaféPress. (Copies of this email correspondence are attached hereto as Exhibit L.)

36.     Notwithstanding CafePress' representations, CaféPress has continued to manufacture, advertise, promote, distribute,sell and deliver infringing products bearing HPNF's trademarks and/or promoting and advertising those products using HPNF's trademarks, including as recently as May 13, 2011 when images of such products, offers to sell them, and related promotional displays were contained on the CafePress website, www.cafepress.com. (Attached hereto as Exhibit M are copies of May 13, 2011 printouts from the CafePress website displaying these infringing products and CafePress' advertising, promotion and offering to sell them using HPNF's BLACK PANTHER PARTY word mark, and BLACK PANTHER PARTY & design mark (consisting of an illustration of a black panther.)

37.     Notwithstanding CafePress' prior representations to HPNF's lawyer, CaféPress has continued to manufacture, advertise, promote, offer to sell, sell and distribute products bearing Dr. Huey P. Newtown's name and image, including as recently as May 13, 2011 when images of such products, offers to sell them, and related promotional displays were available on the CafePress website, www.cafepress.com.  (Attached hereto as Exhibit N are copies of May 13, 2011 printouts from the CafePress website showing such commercial uses of Dr. Newton's name and image, including such uses in combination with HPNF's design mark for an illustration of a black panther.)

38.     CafePress organizes and presents the infringing products in a manner designed to falsely promote their association with The Black Panther Party and Dr.Newton by combining various collections of items and describing them as "Black Panther Party" and "Huey P. Newton" products.

39.     In furtherance of this scheme, the CaféPress website identifies the following collections as among its "Most Popular "Black Panther Party' Products": "Black Panther Party T-Shirts & Tees," "Black Panther Party Gifts," "Black Panther Party Sweatshirts & Hoodies," "Black Panther Party Hats & Caps," and "Black Panther Party Buttons, Pins & Badges." (Copies of May 13, 2011 printouts from the CafePress website depicting CafePress' promotion of these infringing products in this manner are attached hereto as Exhibit O.)

40.     In furtherance of the above-referenced scheme, the CaféPress website identifies the following collections as among its "Most Popular 'Huey P. Newton' Products: "Hats & Caps," "Huey Newton T-Shirts & T's," "Huey Newton IPad Cases & Covers," "Huey Newton Coffee Mugs," "Huey Newton Bags, Tote Bags & Messenger Bags," and "Huey Newton Kids Baseball Shirts." (Copies of the printouts from the CafePress website depicting CafePress' promotion of these products in this manner are attached hereto as Exhibit P.)

41.1    The CafePress website further displays, promotes, and offers to sell products infringing HPNF's "ALL POWER TO THE PEOPLE" trademark, including without limitation those displayed in the May 13, 2011 printouts from its website attached hereto as Exhibit Q.

41.2    Subsequent to the filing of the original Complaint on May 20, 2011, CafePress has continued to sell products infringing HPNF's "ALL POWER TO THE PEOPLE" trademark by using the virtually identical and/or confusingly similar mark "POWER TO THE PEOPLE" on such products. (Copies of depictions of such products printed out from CafePress' website on June 15, 2011 are attached hereto as Exhibit R).

42.     CafePress' use of HPNF's registered trademarks, unregistered marks, common law trademarks and other designations of origin are likely to cause confusion as to the source and origin of CafePress' goods and to cause mistake, or to deceive the public by misleading

consumers into believing that CapePress' goods emanate from, are approved, authorized, endorsed or sponsored by , or are in some way associated or connected with HPNF.

43.     CafePress' use of HPNF's registered trademarks, unregistered trademarks, common law marks and other symbol's of origin, and of HPNF's publicity rights, has been, and continues to be, done willfully, after (a) HPNF notified CaféPress in writing of CafePress' infringements and violations of HPNF's exclusive rights, and (b) CafePress thereafter agreed in writing to cease and desist from the conduct complained of by HPNF.

**COUNT ONE**
**FOR**
**INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS**

44.     HPNF repeats and realleges the allegations set forth in paragraphs 1 to 43 above as if fully set forth herein.

45.     CafePress' aforesaid conduct constitutes willful infringement of HPNF's federal trademark Registeration No. 3500290 for THE BLACK PANTHER PARTY in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

46.     CafePress' aforesaid conduct constitutes willful infringement of HPNF's federal trademark Registration No. 3535599 for ALL POWER TO THE PEOPLE, in violation of section 32(1) of the Lanham Act.

47.     During the No. 2834703 Registration Period, CafePress' aforesaid conduct constituted willful infringement of HPNF's then-federally trademark Registration No. 2834703 in violation of section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

48.     Upon information and belief, by virtue of its unlawful conduct, CafePress has made or will make substantial profits and gains to which it is not in law or equity entitled.

49. CaféPress' aforesaid conduct has caused HPNF irreparable harm and, unless enjoined, will continue to cause HPNF irreparable harm, for which HPNF has no adequate remedy at law.

## COUNT TWO
## FOR
## TRADEMARK COUNTERFEITING

50. HPNF repeats and realleges the allegations set forth in paragraphs 1 to 49 above as if fully set forth herein.

51. CafePress' use of marks which (a) are identical to or substantially indistinguishable from HPNF's federally registered trademarks, and (b) are used on or in connection with the same goods covered by HPNF's registrations, in connection with the sale, offering for sale, distribution or advertising of such goods, constitutes trademark counterfeiting, in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

52. CafePress' aforesaid conduct constitutes willful trademark counterfeiting of HPNF's federally registered trademark No. 3500290 (THE BLACK PANTHER PARTY).

53. CafePress' aforesaid conduct constitutes willful trademark counterfeiting of HPNF's federally registered trademark No. 3535599 (ALL POWER TO THE PEOPLE), in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

54. CafePress' aforesaid conduct, to the extent that such conduct occurred during the No. 2834703 Registration Period, constituted willful trademark counterfeiting of the word and design trademark then-covered by that registration, in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

55. Upon information and belief, by virtue of its unlawful conduct, CafePress has made or will make substantial profits and gains to which it is not in law or equity entitled.

56.     CaféPress' aforesaid conduct has caused HPNF irreparable harm and, unless enjoined, will continue to cause HPNF irreparable harm, for which HPNF has no adequate remedy at law.

## COUNT THREE
## FOR
## VIOLATION OF SECTION 43(A) OF THE LANHAM ACT

57.     HPNF repeats and realleges the allegations set forth in paragraphs 1 through 56 above as if fully set forth herein.

58.     CafePress' aforesaid conduct constitutes the use in commerce of false descriptions, representations and designations of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59.     Upon information and belief, by virtue of its unlawful conduct, CafePress has made or will make substantial profits and gains to which it is not in law or equity entitled.

60.     CaféPress' aforesaid conduct has caused HPNF irreparable harm and, unless enjoined, will continue to cause HPNF irreparable harm, for which HPNF has no adequate remedy at law.

## COUNT FOUR
## FOR
## VIOLATION OF THE STATUTORY RIGHT
## OF PUBLICITY UNDER CALIFORNIA LAW

61.     HPNF repeats and realleges the allegations set forth in paragraphs 1 to 60 above as if fully set forth herein.

62.     Dr. Huey P. Newton was a domiciliary of the State of California at the time of his death and during his lifetime.

63     Under California law, Dr. Newton's posthumous right of publicity passed to his widow, Fredrika Newton, upon his death, pursuant to section 3344.1 of the California Civil

Code. Fredrika Newton is a domiciliary of the State of California.

64.    By virtue of the assignment referred to in paragraph 15 above, Dr. Newton's posthumous right of publicity was transferred to HPNF, and HPNF continues to be the owner of that right. HPNF is a non-profit corporation organized under the laws of the State of California.

65.    CaféPress' aforesaid conduct constitutes the use of a deceased personality's name, photograph and likeness on or in products, merchandise, and goods, and for purposes of advertising, selling and soliciting purchases of products, merchandise and goods, without the consent of HPNF, and thereby causing damage to HPNF, in violation of section 3344.1 of the California Civil Code.

66.    Upon information and belief, by virtue of its unlawful conduct, CafePress has made or will make substantial profits and gains to which it is not in law or equity entitled.

67.    CaféPress' aforesaid conduct has caused HPNF irreparable harm and, unless enjoined, will continue to cause HPNF irreparable harm, for which HPNF has no adequate remedy at law.

### COUNT FIVE
### FOR
### VIOLATION OF THE RIGHT OF PUBLICITY
### UNDER CALIFORNIA COMMON LAW

68.    HPNF repeats and realleges the allegations set forth in paragraphs 1 to 67 as if fully set forth herein.

69.    CafePress' aforesaid conduct constitutes the use of Dr. Huey P. Newton's identity and the appropriation of his name and likeness in connection with the advertising and sale of products, goods and merchandise, without HPNF's consent, and thereby causing damage to HPNF, in violation of the right of publicity under California common law.

70.    Upon information and belief, by virtue of its unlawful conduct, CafePress has

made or will make substantial profits and gains to which it is not in law or equity entitled.

71.   CaféPress' aforesaid conduct has caused HPNF irreparable harm and, unless enjoined, will continue to cause HPNF irreparable harm, for which HPNF has no adequate remedy at law.

**COUNT SIX**
**FOR**
**COMMON LAW UNFAIR COMPETITION**

72.   HPNF repeats and realleges the allegations set forth in paragraphs 1 to 43 as if fully set forth herein.

73.   CafePress' aforesaid conduct constitutes unfair competition under the common law of the State of California.

74.   Upon information and belief, by virtue of its unlawful conduct, CafePress has made or will make substantial profits and gains to which it is not in law or equity entitled.

75.   CaféPress' aforesaid conduct has caused HPNF irreparable harm and, unless enjoined, will continue to cause HPNF irreparable harm, for which HPNF has no adequate remedy at law.

**COUNT SEVEN**
**FOR**
**UNFAIR COMPETITION IN VIOLATION OF THE**
**CALIFORNIA BUSINESS AND PROFESSIONAL CODE**

76.   HPNF repeats and realleges the allegations set forth in paragraphs 1 to 43 above as if fully set forth herein.

77.   CafePress' aforesaid conduct constitutes unfair competition in violation of the sections 17200 *et seq.* of the California Business & Professional Code, Cal. Bus & Prof. Code §§17200 *et seq.*

78.   Upon information and belief, by virtue of its unlawful conduct, CafePress has

made or will make substantial profits and gains to which it is not in law or equity entitled.

79.     CaféPress' aforesaid conduct has caused HPNF irreparable harm and, unless

enjoined, will continue to cause HPNF irreparable harm, for which HPNF has no adequate

remedy at law.

## COUNT EIGHT
## FOR
## CONTRIBUTORY INFRINGEMENT

80.     HPNF repeats and realleges the allegations set forth in paragraphs 1 to 43 above

as if fully set forth herein.

81.     CafePress' aforesaid conduct, in addition to constituting direct infringement, also

constitutes contributory infringement of HPNF's trademarks and Dr. Huey P. Newton's right of

publicity, by virtue of CafePress' participation in, encouragement and promotion of, and

common purpose with, the individuals selling infringing products on the CafePress website.

82.     Upon information and belief, by virtue of its unlawful conduct, CafePress has

made or will make substantial profits and gains to which it is not in law or equity entitled.

83.     CaféPress' aforesaid conduct has caused HPNF irreparable harm and, unless

enjoined, will continue to cause HPNF irreparable harm, for which HPNF has no adequate

remedy at law.

## COUNT NINE
## FOR
## VICARIOUS LIABILITY

84.     HPNF repeats and realleges the allegations set forth in paragraphs 1 to 43 above

as if fully set forth herein.

85.     CafePress' aforesaid conduct, in addition to constituting direct infringement, also

renders CafePress vicariously liable for the infringements of HPNF's trademarks and Dr. Huey

P. Newton's right of publicity by the individuals selling the infringing products on the CafePress website.

86.     CafePress is vicariously liable for such infringements by virtue of CafePress' knowledge of the infringements; its partnership with such individuals; and its joint control with such individuals over the infringing products, including their selection, manufacture, display, promotion, advertising, sale, distribution and collection and distribution of the proceeds of the infringing sales.

87.     Upon information and belief, by virtue of its unlawful conduct, CafePress has made or will make substantial profits and gains to which it is not in law or equity entitled.

88.     CaféPress' aforesaid conduct has caused HPNF irreparable harm and, unless enjoined, will continue to cause HPNF irreparable harm, for which HPNF has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter Judgment for plaintiff and against defendant as follows:

A.     Ordering, pursuant to 15 U.S.C § 1116 and section 3341.1 of the California Civil Code, that defendant and its agents, servants, representatives, employees, successors and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of this injunctive order, be enjoined, preliminarily and permanently, from

1.    using any marks containing (a) plaintiff's registered trademarks; (b) plaintiff's unregistered trademarks; (c) plaintiff's other designations of origin; (d) any identical or substantially indistinguishable marks; (e) any

colorable imitations of plaintiff's marks; and (f) any other marks, symbols or designations of origin that are confusingly similar to plaintiff's mark;, including, without limitation, (i) the word mark THE BLACK PANTHER PARTY; (ii) the word & design mark THE BLACK PANTHER PARTY combined with an illustration of a black panther; and (iii) the word mark ALL POWER TO THE PEOPLE; and

2.   using on, or in connection with, the sale, offer to sell, distribution, advertising or promotion of any goods or services:  (a) the name "Dr. Huey P. Newton" or any recognizable variation thereof, including without limitation "Huey P. Newton," "Huey Newton" or "Huey;" (b) any photograph, drawing, image or other likeness of Dr. Huey P. Newton; or (c) any other indicia of his persona.

B.     Ordering defendant to pay to plaintiff any damages sustained by plaintiff by reason of defendant's wrongful conduct and any non-duplicative profits derived therefrom, together interest thereon, and plaintiff's costs and attorney's fees;.

C.     Ordering that as exemplary damages plaintiff recover from defendant three times the amount of defendant's profits or plaintiff's damages, whichever is greater, for pursuant to 15 U.S.C. § 1117(b), together with costs, attorney's fees and interest.

D.     Ordering that defendant pay statutory damages for willful trademark counterfeiting in an amount up to $2,000,000 **per counterfeit mark** used by defendant, **multiplied by the number of different types of goods** on, or in connection with, defendant has used each such counterfeit mark, pursuant to 17 U.S.C. § 1117(c), together with costs, attorney's fees and interest.

E.     Ordering that defendant pay to plaintiff damages sustained by plaintiff by reason

of defendant's unauthorized use in commerce of Dr. Huey P. Newton's name, photograph and likeness in violation of section 3344.1(a) of the California Civil Code, together with defendant's profits to the extent not taken into account in computing plaintiff's damages; punitive damage for defendant's willful violations; and plaintiff's costs, attorney's fees and interest relating to this claim.

F.      Ordering defendant to pay plaintiff its damages and defendant's non-duplicative profits, and punitive damages for engaging in willful violations of the common law of the State of New York prohibiting unfair competition.

G.      Ordering that plaintiff be granted such other and further relief as the Court deems just and proper.

Dated:  New York, New York
          June 15, 2011                              Respectfully submitted,

                                          THE LAW OFFICE OF
                                          ROBERT J. BERNSTEIN

                                By:   *Robert J. Bernstein*
                                          Robert J. Bernstein (RB 4230)
                                          *Attorney for Plaintiff*
                                          *THE DR. HUEY P. NEWTON FOUNDATION*

                                          488 Madison Avenue, 10th Floor
                                          New York, NY 10022
                                          Tel: (212) 705-4811
                                          Fax: (212) 593-9175
                                          Email:  rjb@robert-bernsteinlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I have caused a true and correct copy of the annexed AMENDED COMPLAINT to be served upon the attorney of record for defendant CafePress.com, Inc. ("CafePress") at the following address:

Anthony J. Staltari
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, New York 10036

by hand-delivering a copy thereof to Mr. Staltari at the above address.

Robert J. Bernstein